FILED14 JAN '19 10:16USDC-ORP

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
### for the
## STATE OF OREGON

)
)
)
Carlos Arturo Vasquez-Maldonado )
*Petitioner* )
)
v. )   Case No. **3:19-cv-00075-AA**
)   *(Supplied by Clerk of Court)*
)
J. Salazar, Warden )   Evidentiary Hearing Requested
)
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a) Your full name:          Carlos Arturo Vasquez-Maldonado
    (b) Other names you have used:          N.A.
2.  Place of confinement:
    (a) Name of institution:          Federal Correctional Institution - Sheridan
    (b) Address:          P.O. Box 5000
          Sheridan, OR 97378-5000
    (c) Your identification number:          51340-018
3.  Are you currently being held on orders by:
    ☒ Federal authorities          ☐ State authorities          ☐ Other - explain:

4.  Are you currently:
    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
    If you are currently serving a sentence, provide:
        (a) Name and location of court that sentenced you:          Sam M. Gibbons US CourtHouse
        Middle District, 801 N. Florida Ave, Tampa FL 33602
        (b) Docket number of criminal case:          8:09-CR-00493-VMC-TBM-2
        (c) Date of sentencing:  NOVEMBER or December of 2011
    ☐ Being held on an immigration charge
    ☐ Other *(explain):*

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.    What are you challenging in this petition:

☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☒ Disciplinary proceedings

☐ Other (explain): _____

_____

6.    Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court: _____

_____

(b)  Docket number, case number, or opinion number: _____

(c)  Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed): Disciplinary proceedings - Action took by DHO : Disallowance of 41 Days of Good Conduct Time; 21 days Disciplinary Segregation; 1 Year loss of visits and $100 Monetary Fine

(d)  Date of the decision or action: December 5, 2017  (However their is a discreprenancy and the DHO's reports states December 7, 2017 - This is more than a clerical mistake however, as my petition demonstrates).

## Your Earlier Challenges of the Decision or Action

7.    **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☒ Yes        ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court: Bureau of Prisons agency - Western Regional Office in Stockton Californian

(2)  Date of filing: I mailed my BP-10 to the Region on January 10, 2018.

(3)  Docket number, case number, or opinion number:   926870-R1

(4)  Result:   Denied

(5)  Date of result: _____

(6)  Issues raised:   Staff representative not allowed to review evidence, Hearing date that was reported was erroneous; The DHO held my silence against me; Staff representative had insufficient time to prepare me a defense; My cellmate who lived in the cell with me claimed responsibility for the pen (which was found in the general area of our cell.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(b) If you answered "No," explain why you did not appeal:

8. **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☒ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:   General Counsel in Washington D.C.

(2) Date of filing:          I mailed my BP-11 May 01, 2018

(3) Docket number, case number, or opinion number:          926870-A1

(4) Result:      My appeal was denied

(5) Date of result:      June 12, 2018

(6) Issues raised:    The hearing date reported by the DHO was erroneous (The
result of which is not harmless).  My staff representative did not have
an opportunity to review the evidence prior to the hearing;My cellmate
took full responsibility for the pen in his regional appeal, no. 930834-R2.

(b) If you answered "No," explain why you did not file a second appeal:

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes          ☒ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

(2) Date of filing:

(3) Docket number, case number, or opinion number:

(4) Result:

(5) Date of result:

(6) Issues raised:

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____
_____

(b) If you answered "No," explain why you did not file a third appeal:

There is not a third appeal level. However, I did submit a letter to the general counsel asking them to re-consider their response to my BP-11 in lieu of the relief they granted to my cellmate. See Attachment B.

10.  **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes          ☒ No

If "Yes," answer the following:

(a)  Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes          ☐ No

If "Yes," provide:

(1) Name of court: _____
(2) Case number: _____
(3) Date of filing: _____
(4) Result: _____
(5) Date of result: _____
(6) Issues raised: _____
_____
_____
_____
_____
_____

(b)  Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes          ☒ No

If "Yes," provide:

(1) Name of court: _____
(2) Case number: _____
(3) Date of filing: _____
(4) Result: _____
(5) Date of result: _____
(6) Issues raised: _____
_____
_____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: § 2255 is inadequate because I am challenging the carrying out of my sentence in this 2244 motion. I am not challenging my sentence, conviction nor am I asking for a vacation of either.

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes　　☒ No

If "Yes," provide:

(a) Date you were taken into immigration custody:

(b) Date of the removal or reinstatement order:

(c). Did you file an appeal with the Board of Immigration Appeals?

☐ Yes　　☐ No

If "Yes," provide:

(1) Date of filing:

(2) Case number:

(3) Result:

(4) Date of result:

(5) Issues raised:

(d) Did you appeal the decision to the United States Court of Appeals?

☐ Yes　　☐ No

If "Yes," provide:

(1) Name of court:

(2) Date of filing:

(3) Case number:

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

_____

12. **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes          ☒ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

_____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

_____

_____

_____

_____

**Grounds for Your Challenge in This Petition**

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** I was denied due process when I received inadequate assistance from my staff representative in marshaling evidence and presenting a defense, resulting in me being denied a meaningful opportunity to be heard before the Discipline Hearing Officer.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

.(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

On November 26, 2017 at approximately 10:35 a.m., I received an incident report that was written by a Bureau of Prisons employee at Federal Correctional Institution, S.I.S D. Prock. The incident report stemmed from an incident that occured on November 25, 2017 at around 6:45 p.m. S.I.S. D. Prock stated the following in the incident report § 11 :

See continuation page

(b) Did you present Ground One in all appeals that were available to you?

☒ Yes          ☐ No

**GROUND TWO:** The DHO was bias with respect to the factual issues that were adjudicated before him.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

I appeared before the DHO on December 05, 2017 in relation to an incident report I received (I set out such facts in GROUND ONE). However the DHO stated in his report dated December 20, 2017, that me and Mr. toombs, my staff representative, appeared before him on December 07, 2017. This is factually inaccurate. My cell-mate can confirm this, as well as my cell-mate's, I/M Abarca #14632-023, staff representative, Mr. Lyons. My cell-mate also appeared before the DHO along with Mr. Lyons on December 05, 2017.  See attachment.

(b) Did you present Ground Two in all appeals that were available to you?

☒ Yes          ☐ No

**GROUND THREE:** The General Counsel's Office in Washington D.C. denied me equal protection and fair and impartial treatment during the adjudication procedures of my BP-11 administrative remedy.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

On January 10, 2018 I submitted an administrative remedy commonly referred to as a BP-10, to the Western Regional Office in Stockton California.  This was an appeal from  Incident report # ⋄3060267. In my appeal I informed the Regional Director that my cell-mate had accepted responsibility for the pen that was found in the general area of our cell.  In my appeal I continued to deny possession of the contraband.  I attached a written statement signed  by me

(b) Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☒ No

Continuation of facts for GROUND 1.

"On November 25, 2017 during a search of cell, 205 in unit 1A, which is assigned to inmate Abarca, Alberto Reg. No. 14632-023, and inmate Vazquez-Maldonado, Carlos Reg. No. 51340-018. Officer Blash found a laundry detergent box containing several pens, pencils and various papers on the desk in the common area of the cell. When officer Blash opened the pen, he noticed the ink cartrage had an orange substance instead of black ink. I tested the unknown substance that officer Blash found with the NIK test kit A, resulting in a positive test for Amphetamine type compounds (orange to brown color). I proceeded to test kit U, resulting in a positive test for Amphetamines (burgundy color)". I was subsequently taken to the Special Housing Unit.

On Decmber 5, 2017, I appeared before the Discipline Hearing Officer, D. Cortez, with my staff representative, Maintenance Worker Foreman C. Toombs. Mr. Toombs had met with me five (5) minutes prior to me being shackled up and removed from my cell and escorted to where the hearing in front of the DHO would take place. He came to my cell and told me to get dressed, that I would be seeing the DHO momentarily. This was my first interaction with Mr. Toombs since I was placed in the SHU.

My cell-mate, inmate Alberto Abarca #14632-023 was housed with me in the SHU. He was also my cell-mate in general population. He was placed in the SHU as a result of SIS D. Prock writinghhim an incident report for a violation of prohibited code #113, the same language he used in his report against me. I/M Abarca's staff representative was Mr. Lyons.

The DHO did not afford my staff representative adequate time to speak with me prior to the hearing or otherwise marshal evidence and other pertinent facts. This was a violation of the Code of Federal Regulations § 543.43(b)(2).

The DHO found me guilty based upon the incident report, a Memoranda submitted by Correctional Officer A. Blsch (dated 11-25-17), and SIS Technician D. Prock (dated 12-07-17).

Additionally, the DHO did not provide a copy of the investigation and other relevant materials to my staff representative for use on my behalf. This was a violation of the Bureau of Prisons Program Statement 5270.09, chapter 2.

BOP officials failed in their constitutional obligation to provide

Continuation of facts for GROUND 1.

me assistance, in good faith and in my best interests, by not allowing
my staff representative ample time to marshal evidence and prepare and
present a defense on my behalf. I was disabled, for example I had been
confined full-time to the SHU, thus my ability to help myself had been
extremely reduced. The DHO denied me due process when he held a
discipline hearing within five (5) minutes after my staff representative
met with me and told me to "get dressed." This is in contravention of
Wolff v. McDonnell, 418 U.S. 539, 564, 570 (1974).

        I was prejudiced by such actions. Had my staff representative
been provided with the investigation and other releant materials
"PRIOR TO THE HEARING BEFORE THE DHO", after reviewing them and upon
further investigation on his own, he would have learned that the NIK
test is not designed to be used in testing liquid samples. See
Attachment A to this §2241 motion. Furthermore, my staff representative
would have learned that the choice of paper used in utilizing the NIK
test is critical. He would have learned that brown paper, hand towels
or newsprint paper is NEVER to be used. See Attachment A to this § 2241
motion. My staff representative, had he been given time to actually
assist me, could have presented all this to the DHO and he could have
also argued that the liquids in the pens is never actually DRY.

        In any event I was not given such an opportunity.

PAGE 9

Continuation of fact for GROUND 2.

We both appeared approximately around 8:00 a.m. before the DHO.
My cell-mate stated in his appeal to the Western Regional Office that
he attended his hearing before the DHO on 12-05-17. I/M Abarca
reiterated that fact in his appeal to the General Counsel. I stated
that I attended the hearing before the DHO on 12-05-17 in my BP-10
(appeal to the Western Regional Office) and I reiterated such fact in
my own appeal to the General Counsel.

The DHO's written statement detailing the evidence he relied upon
to support the reasons for the disciplinary action he took against me
demonstrates bias. AFTER me and my staff representative were dismissed
from the hearing before the DHO, he then contacted S.I.S. D. Prock and
had him draw up a memoranda. This occurred two days after me and my
staff representative appeared before the DHO. DHO Cortez then drew up
his report on information he asked S.I.S. to provide him after he
dismissed me and my staff representative. He did not call us back to a
future hearing  and he did provide such materials (SIS Report dated
12-07-17) to my staff representative later on. Instead he justified
his own investigation by having the S.I.S. submitt a report/memo and
ultimately relied on such even though it was submitted after the fact
that the hearing was over and I could not contest such evidence.

It is no coincidence that myself, I/M Abarca and both of our staff
representatives can all confirm we all attended the hearing before the
DHO on December 05, 2017. It is no coincidence that the DHO Cortez
falsified the date of the hearing before him. It is no coincidence
that S.I.S. D. Prock completed a memoranda on the date the DHO contacted
him AFTER I appeared before the DHO.

The Bureau of Prison Officials have evidence in their possession
that will absolutely remove any doubt this Court may hold about DHO
Cortez exihibting bias during the adjudication procedures, I am in
advance requesting this court to order the expansion of the record to
include materials relevant to determining the merits of my § 2241
Motion as it relates to this GROUND and Ground THREE. This includes,
but is not limited to:

> 1. Camera/video footage of when I attended my hearing
> before the DHO;
>
> 2. Camera/video footage of when my cell-mate, I/M Abarca
> attended his hearing before the DHO;

Continuation of facts for GROUND 2.

> 3. Any emails or other electronic correspondances between the DHO and the S.I.S.;
>
> 4. Any emails or otherelectronic correspondances Mr. Toombs or Mr. Lyons received informing them that their presence was needed before the DHO;
>
> 5. Any computer logs showing when such data, concerning myself and my cell-mate, surrounding the incident in question and All mentioned staff involved, was actually entered into the computer.

After the examined order documents are reviewed by this court, I'm requesting the presiding assigned Judge to allow both parties to argue whether an evidentiary hearing is required.

Continuation of facst for GROUND 3

my cellmate I/M Alberto Abarca, Reg. No. 14632-023.
    I informed the Regional Director that the DHO's report dated
December 20, 2017 was in error that I attended the hearing on Decem-
ber 07, 2017.  I stated that I attended the hearing on December 05,
2017 at 8:15 a.m.  I took issue with the fact that the DHO did not
have the S.I.S.'s report as it was not available on December 05,
2017.  I took issue with the fact that the DHO held my silence against
me for not making a statement tp the SIS or the Unit Discipline
Committee (UDC).  I requested for the pen to be retested.  Lastly
I pointed out in my appeal that my staff representative claim to me
that he had only been notified five (5) minutes before the hearing
was to take place.  I posed the question and a comment :

In policy, a staff representative is to review evidence, talk to
witnesses, and gather statements ; how can this all be done in a
five minute window?

    The Regional Director denied my administrative remedy appeal,
No. 926870-R1.

    On or about January 8, 2017, my cellmate submitted his BP-10
to the Western Regional Office, from the December 7, 2017 hearing
decision of DHO Cortez regarding incident report no. 3060266.  The
Western Regional Office received his BP-10 on or about February 8,
2018.  In I/M Abarca's administrative remedy appeal  he stated 6
reasons for releif.  One of the reasons, the first and foremost,
he stated for relief was that there was no hearing on 1-7-2017 as
indicated by the DHO in his report.  Abarca stated that the hearing
of the charge actually took place on 1-5-2017 and that it appears
someone falsified the date of the hearing to make it look like
evidence offered by the S.I.S. on 1-7-2017 was considered on 1-5-2017
when it in fact wasn't.  It should be noted that Abarca is stating
the month of January in his regional appeal but, in truth and in fact,
he means December.  Essentially he is leaving out the number 2 behind
the number 1.  In any event, Abarca informed the Regional Director
that his staff representative verified the hearing date through
an e-mail that was sent to him by Mr. Cortez.  Abarca is apparently
referring to a conversation that took place with Mr. Lyons after
the DHO provided us his report.
    On May 10, 2018, Mary M Mitchell, the Regional Director,

Continuation of facts for GROUND 3

denied I/M Abarca's appeal. Just as in my appeal to her, she did
the same thing to my cellmate and never addressed our claim that
we did not attend the hearing before the DHO on December 7, 2017 but
we in truth and in fact attended the hearing on December 5, 2017.
The Warden's Office here at FCI Sheridan received the response from
the Regional Director on June 7, 2018.

On May 00, 2018 I submitted a BP-11, central office admini-
strative remedy appeal to the General Counsel. On May 10, 2018,
The General Counsel received my appeal. I reiterated in my BP-11
that I did not attend a hearing before the DHO as he states in his
report, on December 07, 2017. I stated, again, that my hearing
took place on December 5, 2017. I stated to the General Counsel
that my staff representative did not have achance to review all the
evidence on December 5 because the S.I.S. did not submit his report
until December 7. I told the general counsel their office can
ask my staff representative Tooms (Maintenance foreman) what was
said during the hearing and when the events occurred. I informed
the General Counsel that my cellmate Abarca claimed the pen with
the alleged contraband was his and I referred them to my BP-10
so they could see his statement. I also brought to their attention
that Abarca also claim the pen was his in his BP-10, appeal no.
930834-R2. I also attached an unsworn declaration, under the pains
and penalty of perjury that I attended the hearing before the DHO
on December 5, 2017 with my staff representative. I stated that my
staff representative met with me five minutes before the hearing .

On June 12, 2018, Ian Connors, the Administrator of the
National Inmate Appeals denied my BP-11. He stated in pertinent
part:

The DHO's decision was based upon the evidence detailed in Section V
of the DHO report. We find the determination of the DHO is reasonable
and supported by the evidence. Your due process rights were upheld
during the discipline process.

The General Counsel, never addressed my issue that I did not attend
the hearing before the DHO on December 7, but that I in truth and
in fact attended the hearing on December 5, 2017, with my staff
representative, who met with me five minutes before the hearing.

Continuation of Facts for Ground 3

The Warden's Office received the BP-11 response on June 27, 2018.

On June 14, 2018 I/M Abarca submitted his BP-11 to the General Counsel. The General Counsel received his BP-11 on June 18, 2018. They assigned his appeal case No. 930834-A1.

Inmate Abarca reiterated his arguments he previously submitted in his BP-10 to the Regional Director. On August 10, 2018 The General Counsel granted his request for a rehearing. In their response they state in pertinent part:

For Relief, you request a rehearing.

A review of your appeal reveals questions concerning the disciplinary process. Accordingly, your appeal is being returned to the institution for appropriate action. You will be advised regarding further proceedings in this matter. Upon a final determination, you will be afforded the opportunity to file a new appeal if you desire.

To this extent, your appeal is partially granted.


The Warden's Office here at FCI Sheridan received the General Counsel's response on September 11, 2018.

The General Counsel denied me relief from DHO's Cortez finding of guilt but granted my cellmate relief, despite me and him being, not just similarly situated, but exactly situated. My cellmate even stepped up as a true man and claimed responsibility and rightfully so that the pen was his.

The Bureau of Prisons Officials (mainly the General Counsel) have evidence in their possession that will absolutely support my claim that I was denied equal protection as well as fair and impartial treatment during the adjudication of my BP-11, and even potentially for that matter my BP-10. I am in advance requesting this Court to order the expansion of the record to include materials relevant to determining the merits of my § 2241 Motion as it relates to this Ground. This includes but is not limited to:

1. Any investigative material that the Regional Director discovered during my BP-10 and I/M Abarca's BP-10; and

2. Any investigative material that the General Counsel Discovered during the adjudication of my BP-11 as well as I/M Abarca's BP-11.

After the examined ordered documents are reviewed by this Court 'in camera' I'm requesting the presiding assigned Judge to allow both parties to argue whether an evidentiary hearing is required.

PAGE 14

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

GROUND FOUR:

N/A

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☐ No

14.  If there are any grounds that you did not present in all appeals that were available to you, explain why you did
     not:    Ground One and Ground two I submitted, in this 2241 motion
     though all I did was elaborate more on those particular issues.
     I did not submit ground three because it was not factually
     developed.  This claim is a claim that arose after the fact
     and after the submission of my appeals were submitted and denied.
     In my reconsideration letter at attachment B though I made such
     a claim.

Request for Relief

15. State exactly what you want the court to do:    I wish for the Court to expunge the
    incident report because the SIS report dated December 7, 2017 could

    not have been considered at the actual hearing on December 5, 2017.

    Unfortunately, the DHO participated in an investigation that occurred

    after the actual hearing, 2 days later, and then tailored his

    report to match the SIS report that was submitted after the fact.  The
    appearance of bias is far too great to simply chop my situation up to
    a mere mishap.  Actual bias should be apparent as well as the harm
    I suffered as a result of such bias.  The DHO found me guilty because
    he believed the SIS, but then something that should shock the
    conscious - he collaberrated with the SIS (referring to the DHO) and
    told him of his intentions and then the SIS completed a report on Dec
    7, after the hearing already took place on Dec 5.  The computer log
    could not be altered is the only reason the DHO and the SIS were found
    out otherwise there would be no proof of their conspiracy.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**Declaration Under Penalty Of Perjury**

If you are incarcerated, on what date did you place this petition in the prison mail system:

01/06/2019

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:  01/06/2019

*Signature of Petitioner*

*Signature of Attorney or other authorized person, if any*

ATTACHMENT A

190-541



# SYSTEM OF NARCOTICS IDENTIFICATION

## INSTRUCTIONS FOR USE

# TEST I - LEIBERMAN'S REAGENT

## FOR: General Screening Test

**Test Function**

1. This reagent system presumptively identifies several drugs when used in conjunction with the other field drug kits included in the NIK® Club Drug Kit. This test is to be used after a Brown result in Test A or a clear result in Test A followed by a no change result in Test G. Please refer to the NIK® Identidrug™ Chart for results.

**How to Use Test I**

1. Remove clip and insert into the test pack an amount of powdered suspect material that would fit inside this circle. ⬭ Reseal with clip and tap gently to assure material falls to the bottom of the pouch.
2. With the printed side of the test pouch facing you, break ampule by squeezing the center of the ampoule with the tips of the thumb and forefinger. Agitate gently and observe the color or color changes.

**Interpretation of Resulting Colors**

1. Refer to the NIK® Identidrug™ Chart for test results.
2. It is advisable that this test be used in conjunction with the other tests listed on the NIK® Identidrug™ Chart.
3. If the resulting color(s) is not listed on the NIK® Identidrug™ Chart, stop testing. The NIK® Polytesting System has not presumptively identified any controlled substances.

---

### CAUTION

A. Since these tests contain strong acids, it is suggested that Test F - Acid Neutralizer be used after testing and before disposal.
B. Before discarding used test packs, remove clip and add one measure of acid neutralizer from Test F.
C. Add slowly to prevent bubbling over.
D. DO NOT reseal the test pouch until effervescence has completely stopped.
E. Reseal pouch with clip and discard in a tamper-free disposal unit.
F. No attempt should be made to crush the glass particles after the ampoules are broken.
G. Antidote: In case of contact, immediately flush eyes or skin with water for at least 15 minutes while removing contaminated clothing and shoes. If swallowed, do not give emetics. Contact a physician.

---

### WARNING

These tests are NOT designed for use with liquid samples.

---



13386 International Parkway
Jacksonville, Florida 32218
904.485.1836 FAX: 904.741.5407

## Introduction to the NIK Polytesting System

The NIK® System of Narcotics Identification is based upon a polytesting procedure whereby a suspect material is subjected to a series of progressively discriminating screening tests. The results of individual tests may or may not yield a valid result. However, the sequential results of several tests provide a high degree of certainty that the suspect material is in fact what the NIK® Polytesting System indicates it to be.

Ongoing experiments are conducted with hundreds of licit and illicit chemical compounds in an effort to eliminate false positive results. However, no chemical reagent system for field use exists that is capable of eliminating occasional invalid test results. A complete forensic laboratory would be required to qualitatively identify an unknown suspect substance. In the absence of such a laboratory, utilizing the NIK® Polytesting System is your best assurance that the presumptive results of a positive identification are what they appear to be.

Always begin Polytesting with Test A and continue from test to test until a positive or negative result is obtained. Tests E, L, M, N, P, Q and R are exceptions to this rule and are designed as standalone tests.

EXAMPLE: Beginning with Test A, a suspect material sequences from orange to brown within 10 to 12 seconds. Following the Polytesting Chart. Test U comes next in sequence. A blue result in Test U confirms the presence of Methamphetamine. A reddish-pink or negative result in Test U indicates an Amphetamine-type compound. Only by following the proper sequence of tests from A to U is a positive result obtained.

## General Polytesting Procedures

Before testing can begin, it is important to classify the material using one of the classifications below:

Tablets or other hard materials - Crush a part of the tablet into powder and insert into the test pouch.

Capsules - Open the capsule, remove part of the powder and insert into the test pouch.

Powders - Insert powder directly into the test pouch

Plant material - Begin testing with Test E. Use only a few leaf fragments.

Suspected Brown or Black Tar Heroin - Begin testing with Test L.

Liquid samples - NIK® tests are NOT designed for use with liquid samples. However, liquids may be tested by placing the tip of an NIK® SUBSTANCE LOADING DEVICE or a 1cm square (roughly 1/2" square) piece of paper into the liquid. Remove and allow to air dry. Place the dry paper into the test pack and proceed with the test as instructed. The choice of paper is critical. Unscented, uncolored filter paper is ideal. NEVER use brown paper, hand towels or newsprint.

## Determining the amount of suspect material to use

The amount of suspect material needed to make a successful test varies with the amount and purity of the material. With the exception of plant material, gelatin squares, etc., you should begin by using the loading device to collect an amount of powdered suspect material that would fit inside this circle: ☐ If the resulting colors are too weak, use more material; if too intense, use less.

## Safety Precautions

Many of the tests in the NIK® Polytesting System contain strong acid(s) or bases. Always insert a portion of Pack F (Acid Neutralizer) into the test pack after testing and before disposal of the used test pack. Once an ampoule has been broken, no attempt should be made to further crush the glass or tablet remnants.

In the event that a test pack or chemical is ingested, seek immediate medical attention. If chemicals come into contact with the skin or eyes, wash the skin thoroughly with soap and water. Flush eyes with water and seek immediate medical attention. Call (800) 424-9300 or (202) 483-7616 to obtain additional safety information.

Store NIK® tests in a cool, dark area. Heat will speed up the action of the chemicals in each test, and extreme cold will slow them down. Appropriate care should be exercised. Do NOT store in direct sunlight. Technical Assistance is available during business hours at: (800) 852-0300 or (904) 485-1836

## Breaking the Chemical Ampoules

Care should be taken when breaking the glass ampoules in each test. Each test includes a plastic "harness" that serves to hold the ampoules in place and protect the user from injury. Press firmly in the center of the harness to break each ampoule. Once the glass has broken, do NOT continue to crush the glass ampoules, as a shard may puncture the pouch and result in injury.



Not here

BREAK HERE

Not here

## Interpretation of Test Results

For any test, there are three important factors you should look for:

1. The color or lack of color
2. The color change
3. The location of colors in the test pouch

PINK UPPER LAYER

BLUE LOWER LAYER

To view the colors correctly, hold the test pack roughly 2 to 3 cm away from a white background. Light must filter through the test pouch to review the desired color results. Viewing test results under non-white light or over a colored surface may result in an incorrect determination of the resulting color. Color results may not match the color on the pouch exactly, but should be viewed as a color family. Blue is always blue, regardless of whether it is dark or light.



ATTACHMENT B

Office of General Counsel
Bureau of Prisons
320 First Street, NW
Washington, D.C. 20534

December 20, 2018

Re: Carlos Vasquez-Maldonado
    Reg. No. 51340-018

To Whom it may concern:

    I am writting this office requesting reconsideration of my
Administrative Remedy No. 926870-A1. On June 12, 2018, this office
denied my appeal related to the December 7, 2017 hearing decision
of the DHO regarding incident report no. 3060267.

    In re-consideration of this office's review of my request, I
am asking this office to consider Administrative Remedy No. 930834-A1.
This Administrative Remedy was denied on August 10, 2018 and related
to the December 7, 2017 hearing decision of the DHO regarding incident
report no. 3060266. Inmate Alberto Abarca, Reg. No. 14632-023 filed
the aforementioned Administrative Remedy.

    The incident we both appealed from involved a violation of offense
code 113. Both of us were found guilty, of the same exact contraband
in the cell, by the DHO. The DHO relied upon the same exact specific
evidence when he concluded we were both guilt. When me and my cell-mate,
I/M Abarca appealed our decisions of the DHO, we submitted our appeals
to Western Region and to this office on very closely and similarly
situation circumstances.

    However, this office denied my submission wherein I requested
Administrative Relief, but granted my cell-mate's, I/M Abarca. Please
see attachments "A" and "B". Based upon I/M Abarca's appeal being
granted in part and mine being denied in full, to avoid the appearance
of the bias and to avoid that I was exposed to a procedure that
otherwise would lead a reasonable person to believe I was not treated
impartially or fairly, I'm requesting the DHO's decision be overturned.

    There is another reason I am suggesting such as well. As I stated
in my unsworn declaration, I attached to my Administrative Remedy
this office received on May 10, 2018, My hearing was held on December
5, 2017, not December 7, 2017 as noted by the DHO. For some reason

in my appeal to this office, such was not considered, but when my cell-mate, I/M Abarca stated such fact, the Administrator, Ian Conners, found such fact to be of significant value anr partially granted his appeal.

I point such out to this office because my attendance at the DHO hearing on December 5th and not December 7th is of great importance. Why? Because the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmates behalf. See Program Statement 5270.09 chapter 2.

Unfortunately, on December 5 at 8:15 a.m. the S.I.S. report that the DHO relied upon in making his determination of guilt was unavailable to my staff representative. Essentially, there was nothing on December 5, 2017, for him to request as such report had not yet been prepared nor submitted.

In closing, I stated in my unsworn declaration completed under penalty of perjury, that my staff representative, Mr. Tooms (the .... Maintenance Foreman) met me five (5) minutes before the hearing. This unjustly depreived me of my <u>right to adequate assistance in preparing a defense in advance of my disciplinary hearing.</u> See code of Federal Regulations § 541.43(b)(2).

It is my prayer that this office will re-consider and re-evaluate the evidence and statements put forth in both my appeal as well as my cell-mate's appeal, I/M Abarca, as well as the investigation the Western Regional Office staff and this office staff have completed to date.

Lastly Will you please reconsider my request for re-consideration on the grounds that the company that does the NIK test kits actually instruct the users to not test on paper. Also the Kits only have a shelf life for only one-year. We don't know whether the kit was expired or not, but we do know that the SIS did put the liquid on paper contrary to the instructions of the testing KIT according to the company. If this office were to contact the SIS he could attest to the fact that some of the kits have resulted in false positives. Please see attachment C.

I humbly ask that my finding of guilt be expunged for all the above
mentioned reasons.

Respectfully submitted,

Carlos Arturo Vasquez-Maldonado
Reg No. 51340-018
Sheridan - FCI
P.O. Box 5000
Sheridan, OR 97378-5000