**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
E-mail: jared.hager@usdoj.gov
    Attorneys for Respondent

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **CARLOS ARTURO VASQUEZ-MALDONADO,**[1]<br><br>          Petitioner,<br><br>v.<br><br>**J. SALAZAR, WARDEN**<br><br>          Respondent. | Case No. 3:19-CV-00075-AA<br><br>RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 |

      Respondent, J. Salazar, Warden of the Federal Correctional Institution at Sheridan, Oregon ("FCI Sheridan"), by Billy J. Williams, U.S. Attorney for the District of Oregon, and through Jared D. Hager, Assistant U.S. Attorney (collectively, "the Government"), hereby responds to Petitioner Carlos Arturo Vasquez-Maldonado's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. The Government asks the Court to dismiss the Petition because Vasquez-Maldonado's discipline does not violate procedural or substantive due process.

      Vasquez-Maldonado is a federal inmate, Register Number 51340-018, currently held at FCI Sheridan. Salazar is FCI Sheridan's Warden and the proper party to this case. 28 U.S.C. § 2242.

---

[1] BOP records spell Petitioner's last name "Vazquez-Maldonado." We use Petitioner's spelling here.

**Page 1** Response to Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241

## INTRODUCTION

The Bureau of Prisons ("BOP") charged Vasquez-Maldonado for violating Code 113—Possession of Narcotics, after a search of his cell revealed amphetamines. *See* Declaration of Daniel Cortez (hereinafter "Cortez Decl."), ¶¶ 9-11 & Att. 1. Following notice of the charge and a hearing, a Discipline Hearing Officer (DHO) found Vasquez-Maldonado committed the act as charged. *See id.* Att. 1, at 1. As a consequence, he lost 41 days of credit for good conduct and one year of visitation privileges, and received 21 days in disciplinary segregation and a $100 fine. *See id.* Att. 1, at 3.

The Petition asserts that Vasquez-Maldonado did not commit the offense (his cellmate did), and the BOP violated his due process rights in various ways. *See* ECF 1, Petition at 2, 7. Vasquez-Maldonado asserts that the DHO denied his staff representative evidence and sufficient time to prepare. *See id.* He also asserts that the DHO improperly held his silence against him, and reported an erroneous hearing date. *See id.* at 3. Finally, Vasquez-Maldonado asserts that the DHO was biased. *See id.* at 7.

The Government asks the Court to deny the Petition because the BOP appropriately disciplined Vasquez-Maldonado. The disciplinary hearing comported with due process, and Vasquez-Maldonado has not asserted any prejudicial violation warranting habeas relief. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Moreover, the record reflects that the DHO's decision was supported by sufficient evidence under the governing standard. *See Superintendent v. Hill*, 472 U.S. 445 (1985). The Government respectfully asks the Court to uphold the DHO's discipline and dismiss this case.

## FACTS

Vasquez-Maldonado is serving a 168-month sentence following conviction in the Middle District of Florida for aiding and abetting the possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(A)(1), (B)(1)(A)(VIII), and 18 U.S.C. § 2. *See*

Cortez Decl., ¶ 2.  His projected release date is February 6, 2022.  *Id.*

On November 25, 2017, at approximately 6:45 p.m., Officer A. Blasch searched the cell occupied by Vasquez-Maldonado and his cellmate, and found the following: "There was a detergent box containing several pens, pencils and various papers sitting on their desk in the common area. Upon opening one of the pens in this box I noticed that the ink rod was an odd color and appeared to be filled with something other than ink.  The substance had a slightly orange tint to it and the pen itself was supposed to be a black ink pen.  I confiscated the pen and forwarded it to operations." Cortez Decl., Att. 1, at 7.

SIS Technician D. Prock subsequently tested the orange substance found within the pen for the presence of drugs: "I tested the unknown substance that officer Blasch found with the NIK test kit A, resulting in a positive test for Amphetamine type compounds (orange or brown color).  I proceeded to test kit U, resulting in a positive test for Amphetamines (burgundy color)."  *See id.* Att. 1, at 7.  On November 26, 2017, Prock issued an incident report charging Vasquez-Maldonado with a violation of Code 113, Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by medical staff.[2]  *See id.*; 28 C.F.R. § 541.3, Table 1. A copy of the incident report was delivered to Vasquez-Maldonado by Lieutenant S. Laridon that same day, at 10:35 a.m.  After the incident report was read to Vasquez-Maldonado, he declined to make a statement.  *See id.* Att. 1, at 6.

On November 28, 2017, the Unit Disciplinary Committee ("UDC") convened to consider the charges against Vasquez-Maldonado, who chose again to not comment at that time.  *See id.* Att. 1, at

---

[2] In both the Incident Report and the DHO Report, this is referred to simply as "Possession of Narcotics," with the Code identified as 113.  This is consistent with BOP policy, which states: "The entire language of the prohibited act(s) does not have to be copied.  For example, 'Destroying Government Property, Code 218' or 'Possessing Narcotics, Code 113' would be acceptable listings." *See* Program Statement 5270.09, *Inmate Discipline Program*, Ch. 2, § 541.5, available at https://www.bop.gov/policy/progstat/5270_009.pdf.

**Page  3Response to Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241**

5. Based on the severity of the charge against Vasquez-Maldonado, the UDC referred it to the DHO for consideration. *See id.* The UDC notified Vasquez-Maldonado of his rights before the DHO, which he signed. *See id.* Att. 1, at 9. At that time, Vasquez-Maldonado indicated he did not wish to have a staff representative, and that he did not wish to call any witnesses. *See id.* Att. 1, at 10.

On December 5, 2017, Vasquez-Maldonado changed his mind about having a staff representative, and requested Maintenance Worker Foreman C. Toombs as his staff representative. *See id.* at 2. Toombs agreed to serve as staff representative, and was so appointed. *See id.* Att. 1, at 8.

On December 5, 2017, DHO Cortez held Vasquez-Maldonado's hearing. *See* Cortez Decl., ¶ 4. Prior to commencing the hearing, DHO Cortez allowed Vasquez-Maldonado to consult with Toombs to determine whether they were ready to proceed. *See id.* ¶ 5. They said they were ready to proceed with the hearing. *See id.* If they had not been, DHO Cortez would have postponed the hearing to allow them more time to prepare. *See id.*

DHO Cortez read and reviewed Vasquez-Maldonado's due process rights with him, and confirmed that Vasquez-Maldonado had received a copy of the incident report, and did not wish to call any witnesses. *See id.* Att. 1, at 2. Vasquez-Maldonado indicated he understood his rights. *See id.*

Vasquez-Maldonado denied the charge against him, and made the following statement: "I was not in possession of that pen. There was a lot of pens in there. I would like SIS to test that again." *Id.* Att. 1, at 1. Vasquez-Maldonado submitted no documentary evidence in his defense. *See id.* His staff representative made the following statement: "I would be interested in seeing if another random test would test positive as well, just to rule out the possibility of it being the same. He hasn't had any issues in his past except for about four years ago." *Id.*

Notwithstanding Vasquez-Maldonado's denial, DHO Cortez determined sufficient evidence

supported the charge. Specifically, the DHO relied on Blasch's statement, indicating the pen containing the substance was found in Vasquez-Maldonado's cell. *See* Cortez Decl. ¶ 8. The DHO also relied on Prock's statement indicating the substance tested positive for amphetamines. *See id.* However, pursuant to Vasquez-Maldonado and Toombs's suggestion that further testing be completed to rule out a false positive, DHO Cortez deferred decision to request additional testing and testimony from Prock. *See id.* Specifically, DHO Cortez asked Prock to obtain a brand new pen, identical to the one in which the drugs were found, test the ink cartridge from that pen, and submit testimony regarding whether it generated a false positive for amphetamines. *See id.*

On December 7, 2017, Prock submitted a memorandum to the DHO with the following testimony:

> On November 26, 2017, I tested an unknown substance that was found in cell 205 in unit 1A. The substance was an orange liquid that was inside of an ink [cartridge] of a pen. I cut the [cartridge] open and removed the liquid and placed it on testing paper. I allowed the liquid to dry in accordance with the instructions of the NIK test. I cut a small piece of the dried unknown substance and placed it into the NIK test kit "A". Test kit "A" immediately turned orange and then rapidly turned brown, which is a positive result for amphetamines type compound. I cut a second small piece of the unknown substance and placed it in test kit "U". Test kit "U" changed to a burgundy color, which is positive for result for Amphetamine.
>
> I also tested an ink [cartridge] that was brand new, that was the same brand and color as the ink [cartridge] that was found in cell 205 unit 1A. It was found that the liquid in the [cartridge] was a different (sic). The liquid in the [cartridge] that was recovered from the cell was not as thick as the new pen [cartridge]. I tested the liquid the same way I tested the liquid that was recovered from cell 205 unit 1A. The test result from NIK test kit "A" was negative for amphetamine type compounds. By testing the liquid from a brand new pen I was able to rule out that the test was a false positive, and also [comparing] the liquids from the ink cartridge found and the brand new one, I found that the liquid inside did not match as it should have being that that [cartridges] were the same brand and color."

*See* Cortez Decl., Att. 1 at 2.

On December 7, 2017, DHO Cortez considered the evidence before him, including the results of the additional test requested by Vasquez-Maldonado and Toombs. Though the DHO noted that Vasquez-Maldonado remained silent at earlier stages in disciplinary process, he did not make an

adverse inference based on the silence, nor did he find Vasquez-Maldonado guilty based on that silence. *See* Cortez Decl. at ¶¶ 10-11. Instead, he weighed Vasquez-Maldonado's denial of the charges; Blasch's written report; Prock's written incident report; a photograph of the pen containing an orange substance; photographs of the NIK tests showing positive for amphetamines; and Prock's written statement explaining the procedure used to test the orange substance, and confirming that an identical, brand new pen ruled out a false positive. *See id.*, Att. 1 at 3.

Based on the evidence, DHO Cortez found Vasquez-Maldonado committed the Code 113 violation. *See id.* As a result, the DHO imposed the sanction of 41 days loss of credit for good conduct, 21 days disciplinary segregation; one year loss of visiting privileges, one year visiting restriction (immediate family only), and a $100 fine. *See id.* On December 21, 2017, Vasquez-Maldonado received a copy of the discipline report via institutional mail. *See id.*, Att. 1 at 4.

## ARGUMENT

The Court should deny the Petition because it fails to establish any prejudicial due process violation warranting habeas relief. Additionally, the DHO properly considered the evidence and made a decision supported by "some evidence." The Court should therefore uphold Vasquez-Maldonado's discipline.

### I. Vasquez-Maldonado's Disciplinary Hearing Comported with Due Process.

It is well established that prison disciplinary proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In such proceedings, due process requires (1) written notice of the charges at least 24 hours before the hearing; (2) a neutral and impartial hearing officer; (3) a right to present documentary evidence; (4) a qualified right to call witnesses; and (5) a written statement of the evidence and reasons supporting the disciplinary action. *Id.* at 563-71.

Even where a due process violation may be found in the context of a prison disciplinary

hearing, such a constitutional error is subject to harmless error analysis, which requires that the error has a substantial and injurious effect on the outcome of the proceeding and resulted in "actual prejudice." *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (explaining that harmless error analysis applies in the context of procedural due process challenges to prison disciplinary hearings); *Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (same); *cf. Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (setting out harmless error test from *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

In Vasquez-Maldonado's case, each *Wolff* requirement was met. Written notice was provided on November 26, 2017, well over 24 hours before he appeared before the DHO on December 7, 2017. *See* Cortez Decl. Att. 1, at 5-6. Vasquez-Maldonado had notice of his rights, including the right to call witnesses, which he waived. *See id.* Att. 1, at 9-10. Vasquez-Maldonado did not offer any documentation in his defense, however his verbal statement was reflected in the record. *See id.* Att. 1, at 1-3. After the DHO found Vasquez-Maldonado committed the act as charged and issued sanctions, Vasquez-Maldonado was provided a copy of the DHO report. *See id.* Att. 1, at 4. The DHO report contained a written statement the evidence relied upon and reasons for the sanctions. *See id.* Att. 1, at 2-3.

Vasquez-Maldonado challenges the two remaining the *Wolff* requirements—an impartial hearing tribunal and the provision of a staff representative. Regarding the impartial hearing tribunal, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff*, 418 U.S. at 592. Conversely, it is clearly established that a prison official who participates in the case as an investigating or reviewing officer, or who has personal knowledge of the incident is not sufficiently impartial to preside over the hearing. *Clutchette v. Procunier*, 497 F.2d 809, 820 (9th Cir. 1974), *modified*, 510 F. 2d 613, *rev'd on other grounds by Baxter v. Palmigiano*, 425 U.S. 308 (1976). No evidence even suggests that DHO Cortez witnessed the infraction, investigated it, or

served on the UDC that referred the charge for adjudication. The alleged action of bias is that DHO Cortez obtained additional testimony from Prock on December 7, 2017, two days after the initial hearing was done at the behest of Vasquez-Maldonado and Toombs, his staff representative. In this regard, DHO Cortez's action reflects impartial fact finding, not bias. Because DHO Cortez did not participate in this case other than as adjudicator, Vasquez-Maldonado had an impartial tribunal.

Regarding the staff representative, Vasquez-Maldonado alleges he was deprived of the meaningful assistance because Toombs "met with [him] five (5) minutes prior" to the DHO hearing, and thus did not have "adequate time to speak with [Petitioner] prior to the hearing or otherwise marshal evidence or other pertinent facts." ECF 1, Petition at 8. However, Vasquez-Maldonado has not established that he has a constitutional right to have a staff representative in the first place. The Supreme Court rejected the notion in *Wolff*—"The insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals." 418 U.S. at 570. Instead, an inmate has a right to a staff representative during the disciplinary process only where "an illiterate inmate is involved," or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Id.*

Vasquez-Maldonado has not established his illiteracy, or the requisite complexity to give rise to representation. No evidence suggests he "is within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing." *Id.* Because Vasquez-Maldonado lacks a constitutional right to assistance from a staff representative at his DHO hearing, he lacks a claim based on alleged ineffectiveness of counsel. *See id.*; *Duarte v. Turner*, No. 93-2427, 1995 WL 57187, at *3 (7th Cir. Feb. 10, 1995) (unpublished decision) (rejecting habeas claim that staff representative was ineffective for failing to discover evidence); *Pinson v. Daniels*, No. 12-cv-3006-RM, 2014 WL 984907, at *9 (D. Colo. Mar. 13, 2014).

Even if Vasquez-Maldonado could establish a right to effective assistance by a staff representative, the evidence does not establish that Toombs was ineffective, or that ineffective assistance resulted in an unjust guilty finding. Vasquez-Maldonado complains that he met Toombs just five minutes before the hearing. However, DHO Cortez allowed Vasquez-Maldonado to meet alone with his staff representative to determine whether he was ready to proceed; Vasquez-Maldonado could have but did not ask for more time, but instead said he was ready to proceed with the hearing. *See* Cortez Decl. ¶ 5. Moreover, Toombs raised the issue of a potential false positive, and requested a random test of another pen to see whether it too would test positive. *See id.* Att. 1 at 1. As a result, the DHO deferred ruling for two days to allow for additional testing and testimony. *See id.* at ¶ 8. In short, Vasquez-Maldonado received effective assistance from his staff representative.

To the extent Vasquez-Maldonado complains that he was not allowed to challenge the statement submitted by Prock to the DHO on December 7, 2017, inmates have no right under *Wolff* to confront or cross-examine adverse witnesses during a prison disciplinary hearing. 418 U.S. at 566-68; *see also Baxter v. Palmigiano*, 425 U.S. 308, 322–323 (1976); *Ponte v. Real*, 471 U.S. 491, 510 (1985) (Marshall, J., dissenting). Furthermore, Prock's supplemental testimony was due to Vasquez-Maldonado asking "if another random test would test positive as well, just to rule out the possibility of it being the same." Cortez Decl. Att. 1, at 1. The DHO allowed additional testing and testimony even though sufficient evidence supporting the charge had already been presented. *See id.* ¶ 8.

Vasquez-Maldonado's argument that Toombs should have challenged the NIK procedures is also misplaced. Specifically, he argues his staff representative did not have time to learn "that the NIK test is not designed to be used in testing liquid samples…. Furthermore, my staff representative would have learned that the choice of paper used in utilizing the NIK test is critical. He would have learned that brown paper, hand towels or newsprint is NEVER used…. [He] could have presented all this to the DHO and he could have also argued that the liquids in the pens is never actually DRY."

ECF 1, Petition at 9. In other words, Vasquez-Maldonado asserts that Toombs could not challenge the NIK test's validity. This assertion is factually wrong and legally irrelevant.

First, Toombs did raise the issue of the validity of the test, suggesting another pen should be tested to rule out the possibility of a false positive. Second, there is no basis for challenging the NIK test. There is no indication in the record that the substance was improperly tested. Regarding the type of paper used for the NIK test, and agreeing for purposes of this argument that the proper kind of paper must be used during a NIK test for the test to be valid, there is no indication in the record that the NIK test used brown paper, hand towels, or newsprint. In fact, Prock's supplemental statement clarified that he used the proper test paper as instructed in the NIK instructions. *See* Cortez Decl. Att. 1, at 16. Third, Vasquez-Maldonado's exhibit refutes his assertion that NIK test does not work on liquids: "liquids may be tested by placing… a 1cm square piece of paper into the liquid and allow to air dry. Place the dry paper into the test pack and proceed with the test as instructed." ECF 1, Petition at 19. Thus, according to Plaintiff's exhibit, liquids may be tested for the presence of drugs. Indeed, SIS Technician Prock's statement clarified that he placed the substance on the correct test paper, and then allowed it to dry prior to testing. Thus raising this issue would have again been irrelevant. Finally, the assertion that the liquid in the pen could never be dry, and therefore could never be tested for the presence of drugs, is conclusory and unsupported. It is well-settled that a conclusory allegation of a constitutional violation without evidentiary support fails to establish an entitlement to relief. *See United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984). The assertion is also contradicted by Prock's testimony that he placed the liquid on paper, allowing it to dry. Cortez Decl. Att. 1, at 16.

In sum, Vasquez-Maldonado had a staff representative, with whom he met and decided he was ready to proceed, and who advocated on his behalf. Vasquez-Maldonado's claim that he was prejudicially denied effective assistance from his staff representative is without merit.

## II.     Vasquez-Maldonado's Discipline Is Supported by Some Evidence.

Vasquez-Maldonado also challenges the adequacy of the evidence supporting DHO Cortez's decision to sustain the Code 113 charge. The Court will uphold disciplinary sanctions supported by "some evidence," as required by *Superintendent v. Hill*, 472 U.S. 445 (1985). The "some evidence" standard "is minimally stringent, such that a decision will be upheld if there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Powell v. Gomez*, 33 F.3d 39, 41 (9th Cir. 1994) (emphases in original). A reviewing court should limit itself to this determination and should not "examin[e] the entire record, independent[ly] assess[] the credibility of witnesses, or weigh[] the evidence." *Hill*, 472 U.S. at 455.

The DHO had sufficient evidence in this case. *See* Cortez Decl. Att. 1, at 2-3. Specifically, the DHO relied on multiple sources of evidence, including the testimony from the officer who found the substance hidden in Vasquez-Maldonado's cell, the statement of the officer who tested the substance and determined it to be amphetamines, and photographs of the tested substance. *Cf. Murphy v. Schroeder*, 305 Fed. App'x 329 (9th Cir. 2008) (finding that discovery of a weapon in an inmate's cell was "some evidence" to support disciplinary actions); *Rosser v. Cate*, 2012 WL 17077 (S.D. Cal. Jan. 19, 2012) (finding "that an inmate-manufactured weapon was found hidden in a book belonging to Petitioner's cell mate, in Petitioner's cell, is sufficient to support a finding of guilt for the charged offense under the 'some evidence' standard."), *upheld by Rosser v. Cate*, 490 Fed.App'x 77 (9th Cir. 2013) ("The finding that an altered razor blade was found in Rosser's cell constituted 'some evidence' in support of the conclusion that Rosser was guilty"); *Urciuoli v. Gutierrez*, 2012 WL 2449909, *6 (C.D. Cal. May 1, 2012) (finding that cell phone hidden in light fixture of an inmate's cell was "constructive possession, i.e., he possessed the cell phone based on the fact it was found in his cell that he shared with another prisoner"), *citing Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992).

Vasquez-Maldonado's challenge to his silence being held against him fails for two reasons.

First, while the DHO report indicates initial silence was considered, ultimately it was not weighed against him. *See* Cortez Decl. Att. 1, at 3. Instead, the DHO weighed denial against the evidence. *See id.* Second, governing regulations allow the DHO to make an adverse inference based on an inmate's silence: "[Y]ou may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process. Your silence alone, however, cannot be the basis for finding you committed the prohibited act." 28 C.F.R. § 541.5(b)(1)(B).

In sum, sufficient evidence supports the discipline in this case.

### III.    Vasquez-Maldonado's Discipline Did Not Violate the Equal Protection Clause.

Finally, Vasquez-Maldonado claims the BOP's decision to uphold his discipline while remanding his cellmate's discipline violates the Equal Protection Clause. ECF 1, Petition at 7, 14. However, "a mere demonstration of inequality is not enough" to establish a violation because "the Constitution does not require identical treatment." *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991). To demonstrate BOP has violated his Equal Protection rights:

> [Petitioner] must first show that the [regulation], either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group. Proof of discriminatory intent is required to show that state action having a disparate impact violates the Equal Protection Clause. Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified.

*McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999) (internal quotes omitted). Vasquez-Maldonado "must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). He has not demonstrated that one group is being treated differently than another group, or that he personally has been treated differently based on his membership in that group, let alone discriminatory intent.

Page 12        Response to Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241

Alternatively, Vasquez-Maldonado may argue "class of one" claim by establishing "that the [BOP] intentionally, and without rational basis, treated [him] differently from others similarly situated." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008), *citing Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed… to being an accident or a random act.'" *Id., citing Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).

Vasquez-Maldonado has not met the Equal Protection burden with respect to his cellmate. Assuming for purposes of discipline the two were similarly situated, Vasquez-Maldonado and his cellmate were similarly treated. Instead, Vasquez-Maldonado rests on the view that during their respective administrative appeals, his cellmate received a different result, a remand for further proceedings. *See* ECF 1, Petition at 14. Vasquez-Maldonado thus confuses being similarly situated in the underlying infraction, with being similarly situated in the disciplinary process. He has not established that his disciplinary hearing suffered from the same defect(s) as those of his cellmate's hearing, such that his incident report should have been remanded for further proceedings.

## CONCLUSION

For the reasons stated above, the Government respectfully asks the Court to deny the Petition and dismiss this case.

DATED this 8th day of May, 2019.

> Respectfully submitted,
>
> BILLY J. WILLIAMS
> United States Attorney
> District of Oregon
>
> */s/ Jared D. Hager*
> JARED D. HAGER
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Response to Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241** was placed within a first class postage prepaid envelope, marked "LEGAL MAIL OPEN ONLY IN PRESENCE OF INMATE" and deposited in the United States Mail within the offices of the United States Attorney or at a United States Post Office according to established office practice at Portland, Oregon, on [Date Mailed] addressed to:

Carlos A. Vasquez-Maldonado
FRN 51340-018
Federal Correctional Institution
P.O. Box 5000
Sheridan, OR 97378

/s/ Jared D. Hager
JARED D. HAGER
Assistant United States Attorney